**BUSH et ux. v. MISSOURI STATE LIFE INS. CO. et al.**

No. 14398—Opinion Filed Feb. 5, 1924.

Rehearing Denied March 18, 1924.

1.. **Attorney and Client — Authority of Attorney—Sacrificing Client's Interests by Compromise.**

An attorney can do anything fairly pertaining to the prosecution of his client's cause and the protection of his client's interests involved in the action; but he cannot, under such general authority, surrender or compromise away his client's substantial rights.

2. **Same—Denial of Attorney's Authority—Acceptance of Benefits.**

A party will not be permitted to deny the authority of an attorney to act for him, and, at the same time, take advantage of the benefits secured by the unauthorized acts of such attorney.

3. **Same—Assignment of Insurance by Attorney.**

Where S., as attorney for B., executed an assignment of insurance to A., and B., with knowledge of such assignment, accepts and retains the consideration received therefor, B. cannot, under such circumstances, claim that said assignment is void because S. had no authority to execute the same.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by Victoria Bush and Frank A. Bush against the Missouri State Life Insurance Company and Aetna Building Association. Judgment for defendants, and plaintiffs bring error. Affirmed.

Wm. A. Smith and Morgan & Deupree, for plaintiffs in error.

Keaton, Wells & Johnston and Embry, Johnson & Tolbert, for defendant in error.

Opinion by JARMAN, C. On April 28, 1904, L. A. Bush made application for 20 shares of class "I" insured stock of the Aetna Building Association of Las Vegas, N. M., and in said application L. A. Bush authorized Aetna Building Association to procure and keep in force a policy of insurance on his life for $1,000, payable to the Aetna Building Association, trustee, its successor or assigns, as beneficiary, and stipulating, in case of death, that the proceeds of said insurance policy should be applied to the maturing of the class "I" stock, which, when matured, the amount thereof should be first applied to any amount due the Aetna Building Association, and the balance to be paid to Victoria Bush, his wife.

L. A. Bush and Victoria Bush, his wife, procured a loan of $800 from the Aetna Building Association and gave a mortgage on certain real estate and assigned to the Aetna Building Association the said class "I" stock as security for said loan, and, in keeping with the authority given in the application for said class "I" stock, the Aetna Building Association caused the Hartford Life Insurance Company to execute a ten year renewal term policy of insurance on the life of L. A. Bush for $1,000, payable to the Aetna Building Association, as trustee, as further security for said loan.

Subsequently, the Missouri State Life Insurance Company succeeded the Hartford Life Insurance Company and took over and assumed the said $1,000 insurance policy, and, prior to the expiration of the 10-year term, said insurance for $1,000 was renewed, and on May 18, 1914, the Missouri State Life Insurance Company wrote the policy sued on, and it contains the same provisions as the former policy with reference to the beneficiary, etc.

After borrowing the $800, L. A. Bush and his wife procured a loan of $1,000 from the Aetna Building Association, which was secured by a real estate mortgage; suit was brought to foreclose said mortgage, and on April 29, 1913, judgment was rendered in the district court of Oklahoma county against L. A. Bush and wife for the amount of said indebtedness and a decree rendered foreclosing said mortgage. The defendants appealed from the personal judgment rendered against them in said cause.

On October 27, 1914, L. A. Bush and his wife paid the amount of the $1,000 and interest on the mortgage that was foreclosed. During the meantime, the $800 loan had been paid and the Aetna Building Association had not released the mortgage securing the same. Immediately after paying the judgment in the case involving the $1,000, Bush and his wife filed a suit in the district court of Oklahoma county for usury in connection with the $800 loan and for penalties for the failure of the Aetna Building Association to release said $800 mortgage. On February 17, 1915, judgment was rendered for Bush and his wife for $483.96 usury and $176 penalty, from which the Aetna Building Association perfected the record to take an appeal to the Supreme Court.

On October 13, 1915, before the time had expired to appeal said cause, W. A. Smith, as attorney for Bush and wife, executed a release of the judgment against the Aetna

Building Association for the consideration of $547.41; and said release, in addition to discharging and releasing the judgment for usury and penalty, provided:

"Said plaintiffs do hereby further discharge said Aetna Building & Loan Association from any and all liability upon any cause whatsoever, it being herein intended that the payment herein made shall stand and operate as full payment and settlement of any and all controversies, complaints or errors existing between the said plaintiffs and the said defendant, whether in this cause or in any other cause. it being particularly intended that a certain cause entitled, 'Louis A. Bush and Victoria Bush v. Aetna Building & Loan Association of Las Vegas, New Mexico, No. 5795' pending in the Supreme Court of the state of Oklahcma, shall· be dismissed by said plaintiffs in error at their cost in the Supreme Court.

"And the said plaintiffs, Louis A. Bush and Victoria Bush, do hereby renounce any and all interest in and to any insurance policy or policies that may have been carried or may now be carried by the said Aetna Building Association upon the lives of the said Louis A. Bush or Victoria Bush, or either of them, and consent to any settlement that may be made on behalf of said insurance policy or policies by said Aetna Building & Loan Association with the said insurance company or insurance companies, and any and all settlement made by said Aetna Building & Loan Association with said insurance company or insurance companies shall be in all things binding upon said Louis A. Bush and Victoria Bush, and said Louis A. Bush and Victoria Bush, hereby quitclaim and assign to said Aetna Building & Loan Association any interest they may have in such policy or policies."

In obedience to the terms of settlement as contained in said release. the case, then pending in the Supreme Court, was dismissed, the judgment in the usury case was satisfied, and the consideration, $574.41. was paid to Victoria Bush and her husband. The Aetna Building Association retained the insurance policy and continued to pay the premiums up to and including December, 1917.

L. A. Bush died on December 26, 1917, and this suit was filed in the district court of Oklahoma county by Victoria Bush. surviving wife, and Frank A. Bush. son of the deceased, as plaintiffs, against the Missouri State Life Insurance Company and the Aetna Building Association. as defendants, to recover said insurance. Service was attempted to be had on the Aetna Building Association by publication and thereafter said service by publication was quashed and no other service on the Aetna Building Association was ever attempted and the cause proceed-

ed against the Missouri State Life Insurance Company, alone, as defendant. Said defendant filed a demurrer to the petition of the plaintiffs which was sustained, and the plaintiffs appealed to the Supreme Court, and the judgment of the trial court was reversed in an opinion (Bush v. Mo. State Life Ins. Co.) which is reported in 86 Okla. 182, 207 Pac. 317. The defendant then filed an answer and the cause was submitted on its merits, and at the conclusion of the evidence of the plaintiffs the defendant interposed a demurrer thereto, which was sustained and judgment was rendered for the defendant, and the plaintiffs bring error.

There are several important and interesting questions discussed by counsel in their briefs, but there is one question that is decisive of the case and that is, Did the plaintiffs have any interest in said insurance entitling them to judgment against the defendant?

The defendant contends that the right to said insurance became vested in the Aetna Building Association by the assignment included in the release, above referred to, executed by Victoria Bush and her husband to the Aetna Building Association; and the defendant further contends that said insurance had been paid to the Aetna Building Association, the owner thereof.

The plaintiffs admit that said assignment was executed, but they contend that the same did not vest any right in the Aetna Building Association to said insurance for the reasons (a) that W. A. Smith, attorney, had no authority to assign said insurance; (b) that said assignment was without consideration; and (c) that the Aetna Building Association had no insurable interest in the life of L. A. Bush.

In the first place, it is clear that Frank A. Bush· had no interest in said insurance, because Victoria Bush was designated as the sole beneficiary in the written application for the insurance.

On the question of the authority of the attorney to bind his client, the following rule has been laid down by this court in the case of the First State Bank of Indiahoma v. Carr, 72 Oklahoma, 180 Pac. 856.

"An attorney, by virtue of his retainer, can do anything fairly pertaining to the prosecution of his client's cause and the protection of his client's interests involved in the action; but he cannot under such general authority. surrender or compromise away his client's substantial rights."

Did W. A. Smith, by executing said as-

signment, "surrender or compromise away his client's substantial rights?" The record shows that Mr. Smith had been the attorney for the plaintiff and her husband since 1904, and had represented her in all of this litigation. In the usury suit brought by Mr. Smith, as attorney for the plaintiff, the Aetna Building Association filed an answer alleging that a portion of the money paid by the plaintiff in connection with the $800 loan alleged to be usurious, was for the purpose of paying premiums on this insurance and was so applied and, therefore, was not interest. The plaintiff filed a reply by her attorney, Mr. Smith, alleging that the plaintiff had no interest in said insurance and that the same was taken out by the Aetna Building Association and the premiums were paid by it for its own benefit and it was merely a design and subterfuge on the part of the Aetna Building Association to collect usurious interest from the plaintiff, and judgment was rendered · for the plaintiff for usury on that contention. The plaintiff never claimed any interest in said insurance until after the death of her husband and never paid any premiums on said insurance; and if the Aetna Building Association had not paid the premiums, the policy would have lapsed and there would not have been any insurance for the plaintiff to have claimed an interest in; so, it is plain that the attorney did not "surrender nor compromise away his client's substantial rights" in connection with said insurance by executing said assignment, for the plaintiff had, prior to that time, disclaimed any interest in said insurance and claimed no rights thereto.

Besides, the $574.41, that was paid by the Aetna Building Association to the attorney for the plaintiff, in connection with suits that were pending, was paid to the plaintiff and was accepted and retained by her; and with reference to this transaction, the plaintiff testified:

"A. We supposed through the settlement that it was a settlement of the loan and insurance and everything else."

The plaintiff knew that the disposition of the insurance was involved in the settlement by her attorney, Mr. Smith, with the Aetna Building Association; and the plaintiff will not be permitted to deny the authority of her attorney to make this settlement and at the same time claim the benefits that grew out of said settlement.

In discussing this question, the court, in the case of the First State Bank of India-

homa v. Carr, supra, at page 858, uses the following language:

"We fully recognize and approve the rule that no one is permitted to deny the authority of an agent or attorney to act in his behalf and at the same time take advantage of the fruits secured by the unauthorized acts of such attorney or agent. * * *"

The next contention urged by the plaintiffs is that said assignment is without consideration. For sometime prior to the execution of this assignment, Victoria Bush and her husband had been in Arizona for the health of said husband; and, at the time of this assignment, the time for filing an appeal in the usury case had not expired and the liability of the Aetna Building Association for usury was not admitted and in the event of an appeal it was a matter of conjecture as to what disposition would be made of the case in the Supreme Court and as to when the judgment would be paid, if it should be affirmed, and no doubt the plaintiff and her husband figured that a cash payment of $574.41 at that time would be of more benefit or service to her and her husband than it would later, and, besides, the plaintiffs had repudiated any claim of interest they might have had in said insurance and made no effort to keep the same alive and the assignment of the rights of the plaintiff to said insurance, under the circumstances in connection with the settlement of the suits pending for the cash consideration of $574.41, was a sufficient consideration for said assignment.

As to the third contention made by the plaintiffs, that the Aetna Building Association did not have an insurable interest in L. A. Bush, the plaintiffs are not in a position to take advantage of this contention, if it were tenable, because if the plaintiffs' interest in this insurance was assigned to the Aetna Building Association, and the plaintiffs had no further interest in it, then the question of whether the Aetna Building Association had an insurable interest in the life of L. A. Bush would be one to be settled between the insurance company and the Aetna Building Association, and it would not affect the rights of the plaintiff under such circumstances, regardless of the manner in which the question might be settled.

For the reasons given, the judgment of the trial court is affirmed.

By the Court: It is so ordered.